Alexander, J.
(dissenting in part). I vote to modify the Appellate Division order by vacating the adjudication on the fourth count in the petition in this juvenile delinquency proceeding because the further prosecution of that count, as well as the other counts dismissed by the trial court for legal insufficiency, was prohibited by the Double Jeopardy Clause. The rule implicit in the majority writing hinges this constitutional protection upon the formalism of entry of the order of dismissal and thereby elevates form over substance and, as occurred in this case, permits the presentment agency to reargue a factual adjudication in respondent’s favor. As a result the majority has allowed precisely the evil which the Double Jeopardy Clause was intended to prevent. Therefore I respectfully dissent.
I
The constitutional prohibition of double jeopardy protects individuals from repeated attempts by the State to obtain a conviction for the same offense (Grady v Corbin, 495 US —, 110 S Ct 2084; Green v United States, 355 US 184, 187). The prohibition prevents the State, with its greater resources and power, from subjecting an accused, as a result of such repeated efforts, "to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.” (Green v United States, 355 US, at 187-188, supra; see also, Note, A Closer Look at the Supreme Court and the Double Jeopardy Clause, 49 Ohio St LJ 799, 804-805 [describing other policies served by the clause].) These concerns are so valued in our jurisprudence that an acquittal, even if erroneous, is an absolute bar to subsequent fact-finding proceedings on the same offense (United States v Ball, 163 US 662).
Unquestionably, a dismissal for legal insufficiency is an
*751 "acquittal” for the purposes of double jeopardy and thus bars both a second trial or " 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged.’ ” (Smalis v Pennsylvania, 476 US 140, 146, quoting United States v Martin Linen Supply Co., 430 US 564, 570; see also, Sanabria v United States, 437 US 54; Burks v United States, 437 US 1; compare, United States v Scott, 437 US 82 [dismissal on legal grounds unrelated to the sufficiency of the evidence is not an acquittal for purposes of double jeopardy]; Matter of Pastrana v Baker, 55 NY2d 315.) In Smalis, the Supreme Court concluded that such a dismissal is an adjudication of the facts in the defendant’s favor and therefore an acquittal which terminated jeopardy (compare, Richardson v United States, 468 US 317 [hung jury does not terminate jeopardy]). In so holding, the court specifically rejected the State’s argument that jeopardy was not terminated by a ruling made at the close of the prosecution’s case because resumption of the trial proceedings would constitute only " 'continuing jeopardy.’ ” (476 US, at 145, supra.)
Despite the clear import of Smalis, the majority seeks to avoid the application of that rule to this case by characterizing Family Court’s dismissal of the first four counts of the petition as "inchoate” and not "clearly final” (majority mem, at 749, 750). Despite its disclaimer, the court’s decision appears, ultimately, to turn on the fact that Family Court’s order of dismissal had not been entered before it was vacated (majority mem, at 750). The record clearly demonstrates, however, that Family Court rendered an adjudication of the facts in respondent’s favor and the only distinction between this case and Smalis is the fact that Family Court’s order was not entered. That distinction, in my view, cannot be material because a rule which makes the protections of the Double Jeopardy Clause dependent upon the entry of the order of dismissal is inconsistent with the Supreme Court’s double jeopardy jurisprudence and significantly undermines the policies served by the clause.
II
I turn first to the majority’s characterization of Family Court’s order as "inchoate” and not "clearly final”, a characterization which, in my view, finds no support in the record.
After the presentment agency rested its case, respondent moved to dismiss all five counts of the petition, arguing that *752 the presentment agency had failed to establish a prima facie case because it offered no proof that the car in which respondent was apprehended was the same car owned by the complainant. The presentment agency opposed the motion, arguing that the complainant’s testimony as to where her car was parked and the police testimony as to the location and type of car in which respondent and his alleged accomplices were apprehended "would provide such link to the respondents and the owner of the car to establish that the respondents were in [sic] attempting to steal the car owned by [the complainant].” After a brief recess, Family Court unequivocally granted the motion as to the first four counts, stating:
"The Court has made notes of the testimony of the police officer and the testimony of the owner of the car. There is not a sufficient indicia of the incidentals in terms of the description of the vehicle by the police officer that would establish that the vehicle as observed by the police officer is in point and fact the same vehicle as identified in the record by the complaining witness, the owner of the vehicle. For all the Court knows in terms of this record they are different vehicles. There is not sufficient indicia of the nature of the vehicle. I would point out, for example, there is no description as far as the Court can recollect by the police officer as to the make, model, or year of the vehicle in question. There is no testimony by the police officer as to license plate number. There is no testimony as to vehicle identification number by the police officer. There is also insufficient indicia that the vehicle that the police officer observed the respondents in is in point of fact the vehicle as testified to by the owner of the vehicle as the vehicle that she did not give respondents permission to be in that vehicle, [a] 1981 Mazda.
* * *
"Accordingly, the prima facie motion join[ed] in by respondents’ counsel is granted. The presentment agency has an exception on the record and if appeal was taken and they say this Court was insufficient and to go to me as the finder of fact they will reserve it. But I can only go on the record as made. I would simply note for the record the record is what the Court must go by. I cannot, since I was not called to take judicial notice of anything else or fact to hoard [sic] the record in which facts were taken and since the presentment agency rested I cannot make out the presentment agency’s case for them.
* * *
"I find [sic] the first four counts of the petition they failed to *753 make out a prima facie case.” (Defendant’s appx, at 61-64.)
While the court initially suggested that the motion was granted as to all five counts, it immediately clarified its ruling to reserve decision on the fifth count until after lunch.
After the luncheon recess, the court repeated its ruling dismissing the first four counts, and denied the motion with respect to the fifth count. Nevertheless, on the presentment agency’s motion, Family Court then granted "reargument”, and permitted the agency to introduce additional legal authority for its position that the circumstantial evidence introduced on the agency’s case was legally sufficient to establish a prima facie case. That Family Court viewed its original order of dismissal as completed is evident from the fact that the court deemed it necessary to "vacate[ ] its ruling on [the] prima facie motion and reinstate[ ] the prima facie motion on behalf of both respondents and reserve[ ] decision.” (Defendant’s appx, at 69.) The court then set a three-week adjourned date "for continued fact finding and resolution of the prima facie motion”. On the adjourned date, after reviewing briefs submitted by the presentment agency and by respondent, the court again decided the motion to dismiss for failure to establish a prima facie case — the first two counts of the petition, charging criminal possession of stolen property and attempted grand larceny were dismissed, but the motion was denied as to the third, fourth and fifth counts, charging, respectively, criminal mischief, unauthorized use of a vehicle, and possession of burglar’s tools. The court also denied the motion to dismiss the act of attempted petit larceny which is a lesser included act of the grand larceny count. Respondent has appealed Family Court’s determination that he committed the acts described in the fourth and fifth counts of the petition.
In light of this record, there can be no question that Family Court, which was also the trier of fact, rendered a factual adjudication in respondent’s favor. The court intentionally and unequivocally dismissed the first four counts of the petition because, in its view, the evidence was legally insufficient to make out the presentment agency’s case. This oral order was in no sense "inchoate” and the fact that it was rendered at the close of the presentment agency’s case and therefore "in the context of a continuing proceeding” (majority mem, at 749) is irrelevant for the purposes of double jeopardy (Smalis v *754 Pennsylvania, 476 US, at 145, supra). Nor does the applicability of the protections of the Double Jeopardy Clause turn upon the timing of the challenge to the acquittal. It is of no moment that the presentment agency sought reargument of the dismissal order after a relatively brief luncheon recess. The court’s order of dismissal either was or was not an "acquittal” at the time it was made, notwithstanding what happened afterwards. Similarly, the fact that in this case, the presentment agency did not introduce any new evidence after the issuance of the order of dismissal (majority mem, at 749) also is not dispositive because reconsideration of the motion to dismiss was itself subsequent fact finding. Thus, the only possibly meaningful distinction between this case and Smalis is the fact that unlike the order in Smalis, Family Court’s order of dismissal was not formally entered before it was vacated.
Ill
The issue therefore, is whether application of the Supreme Court’s holding in Smalis v Pennsylvania (supra) that a dismissal for legal insufficiency is an acquittal barring any further fact-finding proceedings is dependent upon whether the order of dismissal was formally entered. Although it contends otherwise, the majority appears to have concluded that formal entry of the order is necessary to implement the protections of the Double Jeopardy Clause,* as is evident from the reliance placed upon United States v LoRusso (695 F2d 45 [2d Cir], cert denied sub nom. Errante v United States, 460 US 1070 [prior to entry of judgment and before discharge of the jury, oral dismissal was not an acquittal for purposes of double jeopardy]) and Rowe v Grizzard (591 F Supp 389 [following LoRusso]). I disagree.
In Smalis v Pennsylvania (supra), the issue of whether a dismissal for legal insufficiency is an "acquittal” reached the court in the context of whether the prosecution could appeal from such an order of dismissal. While the challenged order in that case had been entered, that fact was not material to the *755 court’s decision. Rather, the court emphasized that a ruling that the State’s evidence is legally insufficient is an "acquittal” because it is an adjudication of the facts and therefore, like a jury verdict of acquittal, the dismissal terminates jeopardy and bars any subsequent fact-finding proceedings on the same offense (Smalis v Pennsylvania, 476 US, at 144-145, supra). Significantly, the court’s decision gives no indication that an acquittal by reason of dismissal is to be treated differently than any other acquittal.
Historically, it is in the area of acquittals that the Supreme Court has most stringently applied the mandates of the Double Jeopardy Clause. Thus, unlike double jeopardy issues arising from convictions or declarations of mistrial prior to verdict, where a criminal defendant has been acquitted, the court has repeatedly refused to balance countervailing State interests in determining the scope of the protections of the clause (see generally, Note, A Closer Look at the Supreme Court and the Double Jeopardy Clause, 49 Ohio St LJ 799). It has long been the law that the Double Jeopardy Clause is an absolute bar to further fact-finding proceedings after an acquittal (United States v Ball, 163 US 662, 671, supra). This is true whether the acquittal is by jury verdict (id), verdict rendered at the conclusion of a bench trial (Kepner v United States, 195 US 100), directed verdict in a jury trial (Green v United States, 355 US 184, supra; Fong Foo v United States, 369 US 141) or, dismissal at the close of the People’s evidence for failure to establish a prima facie case (Smalis v Pennsylvania, supra). The policies underlying this rule are so cherished that even an acquittal "based upon an egregiously erroneous foundation” bars subsequent fact-finding proceedings (Fong Foo v United States, 369 US, at 143, supra).
Moreover, the court has repeatedly held of entry of judgment of acquittal is unnecessary for jeopardy to be complete. In United States v Ball (163 US, at 671, supra), the court held that a jury verdict of acquittal barred retrial notwithstanding that the verdict had not been reduced to judgment, stating: "The verdict of acquittal was final, and could not be reviewed, on error or otherwise, without putting him twice in jeopardy, and thereby violating the Constitution. However it may be in England, in this country a verdict of acquittal, although not followed by any judgment, is a bar to subsequent prosecution for the same offense.” The court reiterated this rule in the context of a verdict orally rendered, but not entered, in a nonjury trial: "It is, then, the settled law of this court that *756 former jeopardy includes one who has been acquitted by a verdict duly rendered, although no judgment he entered on the verdict, and it was found upon a defective indictment.” (Kepner v United States, 195 US, at 130, supra [emphasis added].) Since a dismissal for legal insufficiency is every bit as much an acquittal as a verdict of acquittal, there is no principled basis for making the protections of the Double Jeopardy Clause dependent upon a formal entry of judgment of dismissal where such entry is not required for verdicts of acquittal. The fact that review of a dismissal does not necessitate a new trial, but rather a continuation of a trial already begun is answered by the Supreme Court’s holding in Smalis; the Double Jeopardy Clause bars postacquittal fact-finding proceedings, whether those proceedings be a second trial or simply the resumption of a trial already commenced (476 US, at 145-146, supra). Accordingly, I agree with those courts holding that the Double Jeopardy Clause bars reconsideration of a trial order of dismissal, whether or not the order has been formally entered (People v Lerner, 128 AD2d 641; People v Warren, 80 AD2d 905; Pugh v State, 271 Md 701, 319 A2d 542 [Md Ct App]; State ex rel. C.K., 198 NJ Super 290, 486 A2d 1284 [App Div]; see also, Matter of Frank K., 87 AD2d 1003).
Additionally, the facts of this case illustrate the fallacy of imposing a technical "entry” requirement before giving an acquittal by dismissal its full constitutional effect. Notwithstanding that the presentment agency had rested its case and that Family Court had intentionally and unequivocally ordered the dismissal of the first four counts against petitioner, he was subjected to a second attempt to convict him for those same offenses. The presentment agency had a full opportunity first to present its evidence and second to oppose respondent’s motion to dismiss. If it sensed that it might not succeed on the motion, the agency could easily have sought an adjournment to conduct further research or otherwise shore up its argument. The agency failed to do so and yet had an opportunity to reargue the motion to dismiss both after a luncheon recess and, ultimately, after a three-week adjournment during which it was able to find more authority supporting its original position. It is precisely this evil of repeated efforts to obtain a conviction that the Double Jeopardy Clause prohibits (Green v United States, 355 US, at 187-188, supra).
Moreover, the pernicious nature of the rule implicit in today’s decision will, I fear, be even more evident in future cases. Here, of course, the presentment agency’s motion for *757 reargument came within a relatively short time after the court issued its dismissal order. If however, as the majority apparently concludes, such an order was not an "acquittal” at the time it was rendered, the presentment agency, or any prosecuting authority in a criminal case, would be free to seek reargument of a dismissal weeks and even months later, so long as the order had not been entered. This concern cannot be answered by pointing to the prompt nature of the presentment agency’s challenge in this case. Simply put, a dismissal order intentionally and unequivocally issued either is or is not an acquittal at the time it is made, notwithstanding the timing of a subsequent challenge.
Finally, there is no policy to be served by adopting such a grudging construction of the Double Jeopardy Clause. While trial courts certainly have the power to correct or modify their rulings, that power is limited by the Double Jeopardy Clause as well as our own jurisprudence (see, e.g., People v Carter, 63 NY2d 530 [trial court which renders guilty verdict after nonjury trial is without power to reassess the facts and change the verdict]). Furthermore, in this case, as in the case of most rulings on defense motions to dismiss for failure to establish a prima facie case, the concerns and consequences of the Double Jeopardy Clause would not even be implicated if only the prosecuting authority and the Trial Judge had exercised a bit more prudence. As already noted, the presentment agency could have sought an adjournment to better prepare its opposition to defendant’s motion before the court rendered a final decision. When it was apparent that the trial court might grant the motion, the court could have easily adjourned the matter on its own, to seek more complete argument of the motion and to deliberate more thoroughly before granting the motion, given the double jeopardy consequences of such a ruling. In the case of jury trials, of course, the preferred practice of reserving on the motion until after the jury verdict avoids double jeopardy concerns entirely (United States v Wilson, 420 US 332; People v Key, 45 NY2d 111, 120). Thus a bright-line rule that an order of dismissal for legal insufficiency constitutes an acquittal barring subsequent fact finding serves the policies underlying the Double Jeopardy Clause, provides guidance to the courts below and is easily administered. The technical rule implicit in the court’s decision today has none of those virtues.
Accordingly, I dissent.
Chief Judge Wachtler and Judges Simons, Kaye, Hancock,
*758 Jr., and Bellacosa concur; Judge Alexander dissents in part and votes to modify in an opinion in which Judge Titone concurs.
Order affirmed, without costs, in a memorandum.

 This conclusion is not only contrary to Supreme Court case law, as discussed, infra, it is inconsistent with our decisions holding that the People’s time to appeal from a trial court’s oral order modifying a defendant’s conviction runs from the time the order is made and sentence immediately imposed thereon, rather than the time of entry of the order (see, People v Coaye, 68 NY2d 857; see also, People v Singleton, 72 NY2d 845).